```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
                         WESTERN DIVISION
```

TINA L. MILAM,

    Plaintiff,

vs.                                          No. 15-2029-SHL-dkv

SOUTHAVEN POLICE DEPARTMENT;
DETECTIVE TODD SAMPLES, in his
Official capacity; BAPTIST
MEMORIAL HOSPITAL DESOTO;
JERRY POPE, in his Capacity as
Administrator of BMH;
JANE DOE, in her capacity as
Charge Nurse at BMH; JOHN DOE,
in his official capacity as
Supervisor of Security at BMH;
MLGW PENSION DEPARTMENT;
MLGW INSURANCE DEPARTMENT;
MLGW RESIDENTIAL DEPARTMENT;
MARCUS TATE, in his capacity
as employee of MLGW;
TODD WILLIAMS, in his capacity
as attorney for MLGW;
IVAN NORMAN, in her capacity
as employee of MLGW; LG&W FEDERAL
CREDIT UNION; ATT CORPORATE OFFICE
HEADQUARTERS; ATT FRAUD DEPARTMENT;
BARRY C. BLACKBURN, Attorney;
EUGENIA J. JACKSON, Notary Public;
WILL TATE; RONNIE SMITH, SR.;
INELL KNOWLTON; ELLA MAE MCGINISTER;
and AUDREY KNOWLTON,

    Defendants.

REPORT AND RECOMMENDATION FOR *SUA SPONTE* DISMISSAL

On January 12, 2015, the plaintiff, Tina L. Milam ("Milam"), filed a *pro se* complaint, (Compl., ECF No. 1), accompanied by an

application seeking leave to proceed *in forma pauperis*, (ECF No. 2). In an order issued on January 15, 2015, the court granted leave to proceed *in forma pauperis*. (ECF No. 5.) This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.) For the reasons that follow, it is recommended that this case be dismissed for lack of subject matter jurisdiction.

I. PROPOSED FINDINGS OF FACT

Milam's complaint consists of thirty-three typewritten pages entitled "Complaint for Wrongfull [sic] Death and Injunction [sic] Relief," followed by:

> Criminal and Civil Charges for Wrongful Death, Otherwise, Abduction, Fedeal [sic] Kidnapping, Kidnapped, Transported, Forcibly Seizing Vulnerable Adult, Detaing [sic], Restrained, Hostage Taking, Conspiracy, Fraud, Fradulant [sic] Documents, Phone Hacking, Invasion of Privacy, Mail Fraud, Aiding and Abetting, Theft, Fraud, Fraudulent Falsifying Documents, Interstate, Interstate Commerce, Unauthorized Access, Interruption of Service, Confinement.

(Compl., ECF No. 1.) Milam does not list her residency in the Complaint, but in her Application to Proceed in District Court Without Prepaying Fees or Costs, she states under penalty of perjury that her legal residence is in Southaven, Mississippi. (ECF No. 2.)

The complaint names twenty-two defendants:

1. Southaven Police Department ("SPD"), 8691 Northwest Drive, Southaven, MS 38671;

2. Detective Todd Samples ("Samples"), in his official capacity as detective of Southaven Police Department, 8691 Northwest Drive, Southaven, MS 38671;

3. Baptist Memorial Hospital Desoto, 7601 Southcrest Pkwy, Southaven, MS 38671;

4. Jerry Pope, in his capacity as Administrator of BMH, 7601 Southcrest Pkwy, Southaven, MS 38671;

5. Jane Doe, in her capacity as Charge Nurse for BMH, 7601 Southcrest Pkwy, Southaven, MS 38671;

6. John Doe, in his capacity as Supervisor of Security for BMH, 7601 Southcrest Pkwy, Southaven, MS 38671;

7. Memphis Light Gas and Water Division Pension Department, 220 S. Main Street, Memphis, TN 38103;

8. Memphis Light Gas and Water Division Insurance Department, 220 S. Main Street, Memphis, TN 38103;

9. Memphis Light Gas and Water Residential Department, 220 S. Main Street, Memphis, TN 38103;

10. Marcus Tate, in his capacity as employee of Memphis Light Gas and Water Pension Department, 220 S. Main Street, Memphis, TN 38103;

11. Todd V. Williams, in his capacity as employee and attorney for Memphis Light Gas and Water Legal Department, 220 S. Main Street, Memphis, TN 38103;

12. Ivan Norman, in her capacity as employee for Memphis Light Gas and Water Insurance Department, 220 S. Main Street, Memphis, TN 38103;

13. L G & W Federal Credit Union, 1616 Whitten Road, Memphis, TN 38134;

14. AT&T Corporate Office Headquarters, 208 South Akard Street, Dallas, TX 75202;

15. AT&T Fraud Department, 208 South Akard Street, Dallas, TX 75202;

16. Barry C. Blackburn, in his capacity as attorney, The Blackburn Law Firm, as employee and individually, 8429 Industrial Drive, Olive Branch, MS 38654;

17. Eugenia J. Jackson, in her capacity as notary public;

18. Will Tate, witness;

19. Ronnie Smith, Sr., witness, 126 Panama Road, West Helena, AR 72390;

20. Inell Knowlton, brother of Sandy Knowlton, Jr., 430 West Street, West Helena, AR 72390;

21. Ella Mae McGinister, sister of Sandy Knowlton, Jr., 102 Terry Street, West Helena, AR 72390; and

22. Audrey Knowlton, daughter of Sandy Knowlton, Jr., 512 Herb White Way, Pittsburg, CA 94565.

(Compl., ECF No. 1.)

In the complaint, Milam states that this court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), the Fourth Amendment to the United States Constitution, 18 U.S.C. § 1201(a) (the federal kidnapping criminal statute), wrongful death, and interstate commerce. (*Id.* ¶¶ 1-5.) She also alleges that venue is proper in this district because "the claimants reside and agency records are situated in this judicial district and because a substantial part of the events giving rise to this proceeding were committed in this judicial district." (*Id.* ¶ 6.)

This lawsuit arises out of the hospitalization of Mr. Sandy Knowlton, Jr. on December 22, 2013 in Southaven, Mississippi; his subsequent relocation from the hospital to his brother's residence in Helena, Arkansas; and his ultimate death on March 20, 2014, in Arkansas. Under the section of the complaint entitled "Background Information," Milam states that she had known Knowlton for more than twenty years and had assisted him in handling his business and affairs pursuant to a Power of Attorney. (*Id.* ¶ 8.) She further states that she had been in a relationship with him for numerous years and had been caring for him since his illness. (*Id.* ¶ 28.)

In the complaint, Milam alleges that on Sunday, December 22, 2013, she had Knowlton transported by ambulance to Baptist Memorial Hospital Desoto ("BMH") in Southaven, Mississippi because he was showing signs of having a seizure. (*Id.* ¶ 8.) He was treated and admitted to BMH for a seizure disorder. (*Id.* ¶ 9.) On December 24, 2013, a nurse at BMH contacted Milam and told her they had moved Knowlton to the Step Down Intensive Care Unit because he had a high fever. (*Id.* ¶ 11.) Upon Milam's arrival at the hospital, a nurse of Palliative Care asked her about Knowlton's end-of-life wishes, and Milam told the nurse Knowlton was to be resuscitated if necessary. (*Id.* ¶ 13.) On December 26, 2013, Knowlton's attending physician, Dr. Nicole Pant ("Dr. Pant") informed Milam that Knowlton needed a

5

feeding tube in order to survive and scheduled surgery for December 30, 2013. (*Id.* ¶¶ 15-17.) Milam states she set up a name and password for family members to call BMH and receive patient information for Knowlton. (*Id.* ¶ 16.)

At some point, Dr. Pant told Milam that BMH was holding up Knowlton's surgery, and on December 30, 2013, Milam went to BMH and met with hospital administrators to determine the problem concerning the surgery. (*Id.* ¶¶ 18-21.) According to Milam, on the same day, Knowlton's family members explained on the phone to Greg Duckett, Senior Vice President and Corporate Counsel of BMH, and BMH staff that Milam was the representative with power of attorney for Knowlton. (*Id.* ¶ 25.) Further, a conference meeting was held to determine who had power of attorney for Knowlton, and, in this meeting Knowlton's family members continued to indicate Milam was the representative of Knowlton and would make decisions for him. (*Id.* ¶¶ 27-31.)

Milam states in her complaint that on January 6, 2014, she received a call from Knowlton's attending physician, Dr. Puchaev, who told her that Knowlton was to be discharged that day. (*Id.* ¶ 35.) Milam later called the nurse to see if paperwork had been completed to discharge Knowlton. (*Id.* ¶ 38.) The nurse asked for the name and password and Milam repeated the name and password she

6

had chosen; however, the nurse informed her that they were incorrect and would not give her any information about Knowlton. (*Id.* ¶ 39.) Milam then went to BMH, but Knowlton was missing from his room and the nurse would not give her any information about Knowlton's whereabouts. (*Id.* ¶ 42.) Milam alleges that she then went to the office of the hospital administrator, Jerry Pope ("Pope"), accompanied by security officers, but Pope informed Milam he could not give her any information concerning Knowlton. (*Id.* ¶¶ 43-45.) On January 6, 2014, Milam went to the Southaven Police Department and filed a Missing Persons Report. (*Id.* at ¶ 62-64.) On January 21, 2014, Officer Todd Samples ("Samples"), an investigator with the Southaven Police Department, told Milam that Knowlton was with his brother in Helena, Arkansas. (*Id.* ¶ 78.)

On January 7, 2014, Milam visited Memphis Light Gas & Water ("MLGW") Pension Department and changed Knowlton's mailing address to her address. (*Id.* ¶ 93.) Milam alleges that Marcus Tate ("Tate") of the Pension Department and Daphne Winston of the Insurance Department acknowledged her Power of Attorney for Knowlton. (*Id.* ¶ 92.) However, on January 31, 2014, Milam noticed that Knowlton's MLGW pension check was not deposited into her account, and upon inquiring with MLGW, she was informed by Todd Williams, an attorney for MLGW, that Knowlton's brother Ineal

7

Knowlton had presented a Durable Power of Attorney that had been registered with the Shelby County Register of Deeds. (*Id.* ¶¶ 106--111.) Attached to the complaint is a January 24, 2014 Durable Power of Attorney appointing Ineal Knowlton, brother of Sandy Knowlton, as the lawful agent-in-fact for Sandy Knowlton. (ECF No. 1-1.) Also attached to the complaint is a February 5, 2014 letter from Tate to Milam, in which Tate informed Milam that he had spoken with the attorney who drafted the Revocation of the previous Power of Attorney and the new Power of Attorney and that the new documents reflected Knowlton's wishes. (ECF No. 1-2.) Further, on May 21, 2014, Milam called the MLGW Insurance Claims Department and was told by Ivan Norman that Knowlton's insurance claims had been satisfied. (*Id.* ¶¶ 141-145.)

With respect to AT&T, Milam alleges that on January 29, 2014, AT&T allowed Knowlton's daughter, Audrey Knowlton, to disconnect Knowlton and Milam's phone service. (*Id.* ¶ 99.) She further alleges that AT&T gave her personal information to Audrey Knowlton, (*Id.* ¶¶ 97-102), that AT&T tried to embezzle from her bank account without authorization, (*Id.* ¶ 103), and that she asked the AT&T Fraud Department to investigate, but they would not honor her request. (*Id.* at ¶¶ 104-105.) As to LG&W Federal Credit Union, Milam alleges that she went to the LG&W Federal Credit Union in Memphis, Tennessee

on February 14, 2014, to inquire about an account of Knowlton and hers and that she was told the account had been closed because Ineal Knowlton had delivered the registered Power of Attorney. (*Id.* ¶¶ 123-125.) Lastly, as to MLGW Residential Department, Milam alleges that on March 6, 2014, Milam called MLGW Residential Department because someone had been sent to disconnect the utility services at Knowlton's home. (*Id.* ¶ 131.) Milam told the MLGW employee that she was the only person with a power of attorney, however, the MLGW Residential Department ignored her. (*Id.* ¶¶ 133-134.)

Milam states in the complaint that Knowlton died at the home of Ineal Knowlton on March 20, 2014. (*Id.* ¶ 137.)

The complaint sets forth three causes of action: (1) Common Law Fraud, (*Id.* ¶¶ 185-189); (2) Intentional Infliction of Emotional Distress, (*Id.* ¶¶ 190-196); and (3) Conspiracy, (*Id.* ¶¶ 197-199).

Milam requests Milam requests injunctive relief as follows:

> 203. An injunction pursuant to Tennessee Rule of Civil Procedure 65.04 because it is [her] belief, on good adequate factual basis, that the Defendants will have fraudulently disposed of realty and/or personal property, the Plaintiffs [sic] rights will be violated and they will suffer immediate and irreparable harm or damage.
>
> 204. Defendants transferring, encumbering or disposing of real and person property will render a final judgment ineffectual as the Plaintiff will not have access to assets of the Defendants in order to satisfy the judgment.

> 205. An injunction which enjoins the Defendants from filing bankruptcy, chapter 13, dissipating, selling, transferring, conveying, hiding, removing, encumbering and mortgaging any and all real estate, property, business, in which they have ownership interest bank accounts, investment accounts, brokerage accounts, retirement accounts, stocks, bonds, pensions, vehicles, boats, equipment, airplanes without prior approval.

(*Id.* at ¶¶ 203-205.)

For further relief, Milam demands compensatory, punitive, and emotional damages in the amount of $2,000,000.00 against each of the named defendants with the exception of defendant Baptist Memorial Hospital Desoto for which she demands compensatory, punitive, and emotional damages in the amount of $200,000,000.00, for a total demand of $620,000,000.00. (*Id.* at ¶ 206.)

## II. PROPOSED CONCLUSIONS OF LAW

A. <u>28 U.S.C. § 1915(e)(2) Screening</u>

Pursuant to Local Rule 4.1(a), service will not issue in a *pro se* case where the *pro se* plaintiff has been granted leave to proceed *in forma pauperis* until the complaint has been screened under 28 U.S.C. § 1915(e)(2). The clerk is authorized to issue summonses to *pro se* litigants only after that review is complete and an order of the court issues. This report and recommendation will constitute the court's screening.

The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action

> (i)   is frivolous or malicious;
>
> (ii)  fails to state a claim on which relief may be granted; or
>
> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S. C. § 1915(e)(2).

B.   Standard of Review for Failure to State a Claim

In assessing whether Milam's complaint states a claim on which relief may be granted, the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)(quoting *Iqbal*, 556 U.S. at 681)(alteration in original). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550

U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."). "A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28.

*Id.* at 471.

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be

liberally construed." *Williams*, 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading")(internal quotation marks omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Paynes's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004)("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

C. <u>Subject-Matter Jurisdiction</u>

As an initial matter, the court must determine whether it has subject-matter jurisdiction over this action. "Federal courts are

courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *see also Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)("Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."); *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982)("Federal courts are courts of limited jurisdiction. The character of the controversies over which federal judicial authority may extend are delineated in Art. III, § 2, cl. 1. Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction."); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 ("It is a fundamental precept that federal courts are courts of limited jurisdiction.").

Federal courts are obliged to act *sua sponte* whenever a question about jurisdiction arises. *See, e.g., Ins. Corp. of Ireland, Ltd.*, 456 U.S. at 702 (stating that "a court, including an appellate court, will raise lack of subject-matter jurisdiction on its own motion"); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 287 n.10

(1938); *Answers in Genesis, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009)("[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte.*"). Under Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

    1.   *Federal-Question Jurisdiction under 28 U.S.C. § 1331*

In her complaint, Milam cites 28 U.S.C. 28 U.S.C § 1331, the federal question jurisdiction statute, as one basis for this court's subject matter jurisdiction. (Compl. ¶ 1, ECF No. 1.) 28 U.S.C § 1331 provides for federal jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." In this case, no federal question appears on the face of Milam's complaint. Milam specifically pleads three state common law causes of action: fraud, intentional infliction of emotional distress, and conspiracy. None of these involve a federal law. Milam's complaint can be liberally construed to also allege state law claims of negligence, wrongful death, and breach of contract, none of which involve a federal law.

In the paragraph headed "Jurisdiction," Milam also states that "[t]his is an action brought under the Fourth Amendment of the United States Constitution," (Compl. ¶ 2, ECF No. 1), however, Milam fails

15

to plead any cause of action in the complaint for violation of her Fourth Amendment rights. She also alleges that this court "has jurisdiction [] pursuant to Interstate Commerce," (*Id.* ¶ 5), but "interstate commerce" in and of itself is not a basis for jurisdiction.

Finally, Milam alleges that the "Federal Court has Jurisdiction pursuant to Federal Kidnapping Act (18 USCS § 1201(a)), the person be held 'Otherwise.'" (Compl. ¶ 3, ECF No. 1.) To the extent Milam is asserting a cause of action arising under the federal criminal kidnapping statute, there is no private right of action. This is a civil action. Absent a private right of action, a plaintiff cannot recover civilly for violation of a criminal statute. *See Saro v. Brown,* 11 F. App'x 387, 388 (6th Cir. 2001)("Violations of these [mail and wire fraud] sections of the federal criminal code do not give rise to independent causes of action."); *Collins v. Mortg. Elec. Registration Sys.*, No. 3:11-cv-00264, 2012 WL 610191, at *4 (M.D. Tenn. Feb. 24, 2012)(dismissing plaintiff's claims for criminal forgery and criminal grading of theft offenses in civil action); *see also Hopson v. Shakes*, No. 3:12CV-722-M, 2013 WL 1703862, at *2 (W.D. Ky. Apr. 19, 2013)(holding that federal extortion statute "is a criminal statute, and federal courts have consistently found that the Hobbs Act does not support a private cause of action")(internal quotation marks omitted)). In addition, an individual cannot file

criminal charges. Therefore, the federal kidnapping criminal statute cannot support a basis for subject matter jurisdiction in this civil action.

2. *Diversity Jurisdiction*

It is also necessary to consider whether there might be subject-matter jurisdiction under 28 U.S.C. § 1332, the diversity jurisdiction statute. Diversity of citizenship means that the action is between "citizens of different States." 28 U.S.C. § 1332(a). According to 28 U.S.C. § 1332, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." A federal court has jurisdiction under § 1332 only if there is "complete diversity between all plaintiffs and all defendants." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005)(citations omitted). "To establish diversity jurisdiction, one must plead the citizenship of the corporate and individual parties." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 n.20 (D.C. Cir. 1983); *see also Johnson v. New York*, 315 F. App'x 394, 395 (3d Cir. 2009)(per curiam); *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987)(complaint did not properly allege diversity jurisdiction); *Leys v. Lowe's Home Ctrs., Inc.*, 601 F. Supp. 2d 908, 912-13 (W.D. Mich. 2009)(complaint and notice of removal did not adequately

17

establish diversity jurisdiction); *Ellis v. Kaye-Kibbey*, No. 1:07-cv-910, 2008 WL 2696891, at *2-3 (W.D. Mich. July 1, 2008)(dismissing complaint for failure adequately to allege facts establishing diversity of citizenship despite conclusory allegation that diversity exists); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1208 (3d ed. 2004).

Milam is a citizen of Mississippi and a number of the defendants named in the complaint are also citizens of Mississippi: the Southaven Police Department; Detective Todd Sample; Baptist Memorial Hospital Desoto; Jerry Pope; Barry Blackburn; and the Blackburn Law Firm. Thus, complete diversity does not exist, and the court lacks diversity jurisdiction.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that Milam's complaint be dismissed without prejudice *sua sponte* for lack of subject matter jurisdiction.

Respectfully submitted this 13th day of February, 2015.

s/Diane K. Vescovo
DIANE K. VESCOVO
CHIEF UNITED STATES MAGISTRATE JUDGE

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.